IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| CARL JONES, | * |
|     *Petitioner*, | |
| v. | * CIVIL ACTION NO. WDQ-11-2120 |
| BOBBY SHEARIN, et al., | * |
|     *Respondents*. | |
| | *** |

MEMORANDUM

A Response to the above-styled Petition for Writ of Habeas Corpus, along with exhibits and the Petitioner's Reply, have been filed in this case. The matter is now ready for dispositive review. No hearing is necessary. *See* Rule 8(a), *Rules Governing Section 2254 Cases in the United States District Courts*; Local Rule 105.6 (D. Md. 2011); *see also Fisher v. Lee*, 215 F.3d 438, 455 (4th Cir. 2000) (petitioner not entitled to a hearing under 28 U.S.C. §2254(e)(2)). For the following reason, the Petition will be denied and dismissed with prejudice.

I. Background

The Petitioner was convicted of numerous charges stemming from a car-jacking and lengthy police chase which crossed several Maryland county lines. He was tried first in Montgomery County and convicted of carjacking and second-degree assault. ECF No. 16, Ex. 25. The Petitioner was also charged in Montgomery County with child kidnapping, but the jury did not reach a unanimous verdict on the charges. *Id.* In December, 2004, Jones was sentenced to serve 40 years in prison for his Montgomery County convictions. *Id.* The State nolle prossed the child kidnapping charges following sentencing. *Id.*

The Petitioner was also charged in the Circuit Court for Anne Arundel County, Maryland with kidnapping, assault, resisting arrest, malicious destruction of property, and related traffic

offenses. In May 2005, after waiving his right to counsel, the Petitioner was tried before a jury with the Honorable Paul Goetzke presiding. ECF No. 1. The Petitioner was convicted of two counts of second-degree assault, two counts of kidnapping, and one count each of resisting arrest, reckless driving, negligent driving, and speeding. *Id.*, Ex. 12. The facts developed at trial, as recounted by the Court of Special Appeals of Maryland, are as follows:

> On July 15, 2003, appellant was driving a stolen Infiniti Q45 in Baltimore City when Baltimore City police officers attempted to conduct a traffic stop of the vehicle. Appellant did not stop. Instead, he proceeded southbound on I-95 at a high rate of speed, with the police in pursuit. Appellant headed westbound on I-495 to River Road in Montgomery County where he came to a stop. Appellant exited the Infiniti, stood in the middle of River Road, and flagged down a Mercedes SUV. Appellant forcibly removed the driver of the SUV from the vehicle, entered the SUV, and drove away. The driver's two children, ages three years and 18 months, remained in the backseat of the SUV.
>
> A high speed chase ensued involving numerous police helicopters and approximately twenty police vehicles from various Maryland jurisdictions. Appellant drove erratically and, at times, at approximately 130 miles per hour. The chase continued for almost two hours. At one point, the police attempted to stop the SUV by altering traffic patterns on Route 50 that would force appellant into a single lane on which the police had thrown "stop sticks." Stop sticks are plastic deployments with metal spikes that gradually deflate the tires of a vehicle that runs over them. Appellant did not reduce his speed as he approached the stop sticks. Instead, he swerved around them and headed directly toward an officer, causing him to dive out of the way to avoid being struck.
>
> Appellant continued driving at a high rate of speed for sometime thereafter, with the police in pursuit. Eventually the police forced the SUV onto the shoulder of Route 50 and to a stop. Appellant refused to exit the vehicle, requiring the police to break the windows and forcibly remove him.

ECF No. 12, Ex. 16, p. 2-3.

On June 6, 2005, the Petitioner was sentenced to a thirty year term of incarceration to run consecutively to the 40 year sentence imposed in the Circuit Court for Montgomery County. *Id.*,

2

Ex. 13. The Petitioner's counseled direct appeal, filed in connection with the Anne Arundel County convictions, raised the following claims:

1. Was appellant, Carl Jones, improperly denied his right to the assistance of counsel?

2. Were appellant's postponement requests improperly denied?

3. Did the trial court err in failing to comply with the provisions of Maryland Rule 4-214? and

4. Did the trial judge err in failing to merge the offense and sentences for speeding and negligent driving into that for reckless driving?

ECF 12, Exs. 14-16, pp. 1-2.

On June 4, 2007, in a reported opinion, the Court of Special Appeals vacated the Petitioner's separate sentences for speeding and negligent driving but otherwise affirmed the Petitioner's judgment of conviction. *Id.*, Ex. 16. Petitioner's counseled Petition for Writ of Certiorari raised the following claims:

1. Where petitioner waived the right to counsel, and subsequently changed his mind on the basis of the growing complexity of the case, and expressly requested the assistance of counsel on the day of, but prior to the onset of trial, did the lower courts err in finding that he had effectively waived his fundamental right to counsel?

2. Under the circumstances of this case, which included, in addition to the matter of counsel, the belated provision by the State of voluminous discovery materials and the deprivation of the opportunity to interview previously subpoenaed witnesses as a result of petitioner's incarceration -- was petitioner denied the right to a postponement? and

3. What are the appropriate respective roles of the administrative judge and the trial judge where questions arise as to whether a postponement is necessary due to a request for counsel, belated discovery, and problems related to the inability of petitioner to interview previously subpoenaed witnesses?

*Id.*, Ex. 17-19.

On February 13, 2008, the court affirmed the Petitioner's judgment of conviction. *Id.*, Ex. 19. The Petitioner did not seek review by the United States Supreme Court.

On March 17, 2009, the Petitioner instituted state post-conviction proceedings. *Id.*, Ex. 20. The petition, as supplemented, litigated, and construed by the court, alleged that:

- A. Appellate counsel was ineffective for failing to raise the following claims on appeal:

    1. The kidnapping charges were barred by double jeopardy; and
    2. The kidnapping charges should have been dismissed because they were not properly charged under the more specific child kidnapping statue; and

- B. The trial court erred in denying Jones the right to call a witness.

*Id.*, Exs. 20-23.

On September 16, 2009, a hearing on the Petitioner's claims was held. *Id.*, Ex. 22. On December 9, 2009, post-conviction relief was denied. *Id.*, Ex. 23. The Petitioner filed an application for leave to appeal the adverse findings of the post-conviction court. *Id.*, Ex. 24. On June 29, 2011, the intermediate appellate court summarily declined to review the Petitioner's case. On July 29, 2011, the court's mandate issued.

In the instant Petition, Petitioner maintains that appellate counsel was ineffective for not raising on appeal the claim that his kidnapping convictions in Anne Arundel County violated double jeopardy, because the Montgomery County child kidnapping charges were nolle prossed after the jury failed to reach a unanimous verdict on those charges. The Petitioner also maintains that the trial court denied his right to compulsory process by not obtaining the attendance of witness Mildred Barry and also erred by refusing, on the day of trial, to let him withdrawal his counsel waiver and postpone the case so he could obtain the assistance of counsel. ECF No. 1.

II. Analysis

A. Threshold Considerations

1. Timeliness & Exhaustion of State Remedies

The Petition was filed within the one-year limitations period set forth in 28 U.S.C. § 2244(d)(1). Further, the Petitioner no longer has any state direct review or collateral review remedies available to him on his claims. Thus, his claims are exhausted for the purpose of federal habeas corpus review.

2. Procedural Default

Before a petitioner may seek habeas relief in federal court, he must exhaust each claim presented to the federal court by pursuing remedies available in state court. *See Rose v. Lundy*, 455 U.S. 509, 521 (1982). This exhaustion requirement is satisfied by seeking review of the claim in the highest state court with jurisdiction to consider the claim. *See O'Sullivan v. Boerckel*, 526 U.S. 838, 845-46, 119 S. Ct. 1728, 1733 (1999); 28 U.S.C. § 2254(b), (c). In Maryland, this may be accomplished by raising certain claims on direct appeal and other claims through post-conviction proceedings. Exhaustion is not required if at the time a federal habeas corpus petition is filed a petitioner has no available state remedy. *See Teague v. Lane*, 489 U.S. 288, 297-98 (1989).

When a petitioner has failed to present a claim to the highest state court with jurisdiction to hear it, whether by failing to raise the claim in post-conviction proceedings or on direct appeal or by failing to timely note an appeal, the procedural default doctrine applies. *See Coleman v. Thompson*, 501 U.S. 722, 749-50 (1991) (failure to note timely appeal); *Murray v. Carrier*, 477 U.S. 478, 491-92 (1986) (failure to raise claim on direct appeal); *Murch v. Mottram*, 409 U.S. 41,

45-46 (1972) (failure to raise claim during post-conviction proceedings); *Bradley v. Davis*, 551 F. Supp. 479, 481-82 (D. Md. 1982) (failure to seek leave to appeal denial of post-conviction relief). The procedural default doctrine bars consideration of a claim in a petition for habeas corpus absent a showing of cause and prejudice or actual innocence. *See Murray*, 477 U.S. at 495-96; *Wainwright v. Sykes*, 433 U.S. 72, 86-87 (1977). Even when a petitioner fails to show cause and prejudice for a procedural default, a court must still consider whether it should reach the merits of the petitioner's claims to prevent a fundamental miscarriage of justice. *See Schlup v. Delo*, 513 U.S. 298, 314-15 (1995); *Bostick v. Stevenson*, 589 F.3d 160, 164 (4th Cir. 2009). The miscarriage of justice standard is directly linked to innocence. *See Schlup*, 513 U.S. at 320-321. Innocence is not an independent claim; rather, it is the "gateway" through which a petitioner must pass before a court may consider defaulted constitutional claims. *See id.* at 315. The miscarriage of justice exception applies when a petitioner shows that "a constitutional violation has probably resulted in the conviction of one who is actually innocent." *Murray*, 477 U. S. at 495-96.

The Respondents assert that, in the Petitioner's application for leave to appeal the denial of post-conviction relief, the Petitioner failed to connect his claim of ineffective assistance of counsel to appellate counsel's failure to pursue a claim of denial of compulsory process. ECF No. 12, Ex. 24. The Court disagrees. The Petitioner, in his *pro se* filing, restated the four allegations of error presented to the post-conviction court and addressed his allegations of post-conviction court error as to all claims. This presentation was sufficient to preserve his claim for further review.

B. Habeas Corpus Standard of Review

An application for a writ of habeas corpus may be granted only for violations of the Constitution or laws of the United States. 28 U.S.C. § 2254(a). Section 2254 sets forth a highly deferential standard for evaluating state-court rulings. *Lindh v. Murphy*, 521 U.S. 320, 333 n.7 (1997); *see also Bell v. Cone*, 543 U.S. 447, 455 (2005). This standard is "difficult to meet," and "demands that state-court decisions be given the benefit of the doubt." *Cullen v. Pinholster*, 131 S. Ct. 1388, 1398 (2011) (internal quotation marks omitted); *Harrington v. Richter*, 131 S. Ct. 770, 786 (2011).

A federal court may not grant a writ of habeas corpus unless the state's adjudication on the merits: 1) "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States;" or 2) "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254 (d). A state court adjudication is contrary to "clearly established federal law" when the state court: 1) "arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law," or 2) "confronts facts that are materially indistinguishable from a relevant Supreme Court precedent and arrives at a result opposite to [the Supreme Court]." *Williams v. Taylor*, 529 U.S. 362, 405 (2000).

Under the "unreasonable application" analysis of § 2254(d)(1), a "state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." *Harrington*, 131 S. Ct. at 786 (*quoting Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)). Thus, "an unreasonable

application of federal law is different from an incorrect application of federal law." *Id.* at 785 (internal quotation marks omitted).

Further, under § 2254(d)(2), "a state-court factual determination is not unreasonable merely because the federal habeas court would have reached a different conclusion in the first instance." *Wood v. Allen*, 558 U.S. 290, 301, 130 S. Ct. 841, 849 (2010). "[E]ven if reasonable minds reviewing the record might disagree about the finding in question," a federal habeas court may not conclude that the state court decision was based on an unreasonable determination of the facts. *Id.* (internal quotation marks and punctuation omitted). "[A] federal habeas court may not issue the writ simply because [it] concludes in its independent judgment that the relevant state-court decision applied established federal law erroneously or incorrectly." *Renico v. Lett*, 599 U.S 766, 772, 130 S. Ct. 1855, 1862 (2010).

The habeas statute provides that "a determination of a factual issue made by a State court shall be presumed to be correct," and the petitioner bears "the burden of rebutting the presumption of correctness by clear and convincing evidence." § 2254(e)(1). "Where the state court conducted an evidentiary hearing and explained its reasoning with some care, it should be particularly difficult to establish clear and convincing evidence of error on the state court's part." *Sharpe v. Bell*, 593 F.3d 372, 378 (4th Cir. 2010).

1. Ineffective Assistance of Counsel Standard

When a petitioner, as here, alleges ineffective assistance of counsel, he must show that counsel's performance was deficient and that the deficient performance prejudiced his defense. *See Strickland v. Washington*, 466 U.S. 668, 687 (1984). The second prong requires the Court to consider whether there was "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694. A strong presumption

8

of adequacy attaches to counsel's conduct--a petitioner alleging ineffective assistance of counsel must show that the proceeding was rendered fundamentally unfair by counsel's affirmative omissions or errors. *See id.* at 690, 696, 700.

*Strickland* holds that "a state court conclusion that counsel rendered effective assistance of counsel is not a finding of fact binding on the federal court to the extent stated by [§ 2254(e)(1)]." *Id.* at 698. "Although state court findings of fact made in the course of deciding an ineffectiveness claim are subject to the deference requirement of [§ 2254(e)(1)], . . . both the performance and prejudice components of the ineffectiveness inquiry are mixed questions of law and fact." *Id.* Accordingly, the § 2254(d)(1) standard applies to the state court's conclusion that the Petitioner's trial counsel rendered effective assistance of counsel, and this Court may not grant relief on this claim as long as the state court denied it based on a reasonable application of the *Strickland* standard to the facts presented in the state court proceeding.

The Petitioner alleges that appellate counsel was ineffective for failing to raise on appeal that his convictions for kidnapping in Anne Arundel County violated double jeopardy, because the charges of child kidnapping were nolle prossed in Montgomery County. The Petitioner also asserts that appellate counsel was ineffective in failing to raise on appeal the denial of compulsory process. ECF No. 1.

The post-conviction court, in denying the Petitioner's ineffective assistance of appellate counsel claims, found:

> Here, Petitioner's appellate counsel testified that she briefed the strongest issue and that she was successful in obtaining certiorari from the Court of Appeals. . . . Petitioner has failed to show that the representation fell below an objective standard of reasonableness and the issues ignored are clearly stronger than those thoroughly litigated by his appellate counsel. Therefore, the Court will deny relief on these bases.

ECF No. 12, Ex. 23, p. 7.

2. Double Jeopardy

The Fifth Amendment provides that no person shall "be subject for the same offense to be twice put in jeopardy of life or limb." U.S. Const. amend. V. This prohibition, which protects against "both [] successive punishments and [] successive prosecutions for the same criminal offense," *United States v. Dixon*, 509 U.S. 688, 696 (1993), applies to the states as well as the federal government, *see Benton v. Maryland*, 395 U.S. 784, 796 (1969). The test to determine whether two offenses are the same for double jeopardy purposes is the required evidence test. *Blockburger v. United States*, 284 U.S. 299, 304 (1932); *Long v. State*, 405 Md. 527, 536-37 (2008); *Jones v. State*, 357 Md. 141, 163-64 (1999). This test focuses on the elements of the offenses:

> If each offense requires proof of a fact which the other does not, or in other words, if each offense contains an element which the other does not, the offenses are not the same for double jeopardy purposes even though arising from the same conduct or episode. But, where only one offense requires proof of an additional fact, so that all elements of one offense are present in the other, the offenses are deemed to be the same for double jeopardy purposes.

*State v. Ferrell*, 313 Md. 291, 298 (1988).

The Court of Appeals of Maryland, in *Abeokuto v. State*, 893 A.2d 1018, 1056 (Md. 2006), considered whether the offenses of child kidnapping and kidnapping were the same offense for merger at sentencing. The court found that the two Maryland crimes were distinguished based on the age of the victim, and that § 3-502, the general kidnapping statute, required the use of fraud or force, while § 3-503, the child kidnapping statute, did not. *Id.* Further, the court observed that § 3-503 is directed at persons who lack the child's parent or

10

guardian's consent to act and prohibits other actions by such persons beyond carrying away the child. *Id.* at 1056-57. Thus, the Court of Appeals concluded that the offenses were not the same under the required elements test but held that the sentences would merge for sentencing purposes under the rule of lenity.[1] *See id.*

Here, the Assistant State's Attorney for Anne Arundel County asserted that kidnapping and child kidnapping constituted separate offenses and that no double jeopardy violation occurred in charging the Petitioner with kidnapping in Anne Arundel County after the child kidnapping charges had been nolle prossed in Montgomery County. ECF No. 12, Ex. 10, p. 126. Under Maryland law the crimes of kidnapping and child kidnapping are separate chargeable offenses, capable of separate verdicts. *See Abeokuto*, 893 A.2d at 1056-567. Thus, no double jeopardy violation occurred when the Petitioner was tried on the kidnapping charge after the child kidnapping charges had been nolle prossed and jeopardy attached. Thus, the Petitioner has failed to establish that he was tried twice for the same criminal offense.

Petitioner's appellate attorney testified that she identified and researched the double jeopardy claim as a possible issue for appeal. She determined that the record did not support a viable claim of double jeopardy. *Id.*, Ex. 22, 17-22. She specifically recounted consulting with her colleagues regarding this issue and "the consensus was it just didn't have merit." *Id.*, p. 22. Appellate counsel identified other grounds for appeal which she determined to be strong and meritorious and which in her professional judgment had the best chance of securing appellate

---

[1] "The rule of lenity, which is only applicable to statutory offenses, provides that 'where there is no indication that the [L]egislature intended multiple punishments for the same act, a court will not impose multiple punishments but will, for sentencing purposes, merge one offense into the other.'" *Abeokuto*, 893 A.2d at 1057.

relief. In fact, appellate counsel was successful in having the traffic violations vacated and in securing certiorari review of the Petitioner's claims of denial of his right to counsel.

### 3. Compulsory Process

The post-conviction court found:

> Petitioner alleges that the trial judge violated his right to due process by failing to serve a number of subpoenas and specifically on one witness Mildred Berry and only informed him of this on his trial date. It is clear from the transcript that the court attempted to serve Petitioner's witnesses and took additional measures trying to secure their presence.[3] A person is denied his right to compulsory process when the State arbitrarily denies him the right to put a witness on the stand. *Washington v. Texas*, 388 U.S. 14, 23 (1967). Here Petitioner has failed to demonstrate that the State arbitrarily denied him his right to compulsory process when in fact, the records show that the trial court made efforts beyond the service of subpoenas to secure Petitioner's witnesses. Judge Goetzke contacted the sheriff's office to check on the status of subpoenas and even placed personal phone calls to other witnesses. (T. 5/13/05 5-9).

ECF No. 12, Ex. 23, p. 70.

The Sixth Amendment provides, in part: "In all criminal prosecutions, the accused shall enjoy the right . . . to have compulsory process for obtaining witnesses in his favor, and to have the Assistance of Counsel for his defen[s]e." U.S. Const. amend VI. This right to compulsory process applies to state prosecutions through the Due Process Clause of the Fourteenth Amendment. *See Washington v. Texas*, 388 U.S. 14, 18 (1967). However, the right is not absolute--a defendant may not, via compulsory process, "secure the attendance and testimony of any and all witnesses," but must first "at least make some plausible showing of how their testimony would have been both material and favorable to his defense." *United States v. Valenzuela-Bernal*, 458 U.S. 858, 867 (1982); *see also United States v. Moussaoui*, 382 F.3d 453, 471 (2004) ("[A] defendant must demonstrate that the witness he desires to have produced would testify 'in his favor.'") (*quoting* U.S. Const. amend. VI).

12

The Petitioner states that Barry would have testified regarding a dispute they had when the Petitioner went to visit his daughter in the hospital--this would have supported his claim that he was distraught, leading to his purchase of PCP which led him to commit the offenses charged. *Id.*, Ex. 10, p. 173-76; Ex. 11, p. 109-112. The proffered testimony was cumulative to the testimony offered by Winter Brown, the mother of the Petitioner's child and daughter of Barry, and by the Petitioner's own testimony. Moreover, post-conviction counsel conceded at the hearing that the substance and potential effect of Barry's testimony was unknown. *Id.*, Ex. 22, p. 16. The evidence of the Petitioner's guilt was overwhelming. He stated during his opening statements, "that was me in that car. That's right. I'm not going to deny that fact." *Id.*, Ex. 9, p. 54. Additionally, the Petitioner made incriminating admissions to the police and during his testimony admitted to committing the charged acts but blamed his actions on his emotional state and drug use. *Id.*, Ex. 10, p. 88, Ex. 11, p. 146-87. The sole purpose of the evidence provided by Barry's testimony appeared to be to bolster the Petitioner's imperfect defense of voluntary intoxication. This evidence was already before the jury through Brown's and the Petitioner's testimony, through testimony of police officers as to the Petitioner's demeanor, and through the evidence log which listed drug residue and paraphernalia found in the vehicles driven by the Petitioner.

Moreover, the record demonstrates that, although the Petitioner had filled out forms in order to issue a subpoena for Barry, the subpoena was not executed. The parties dispute whether the Petitioner provided the court with Barry's proper address. While the trial record is replete with commentary that the address was not proper, the Petitioner has provided an affidavit from Barry dated November 16, 2009, attesting to the fact that the address on the subpoena was

correct for her at the time of trial.[2] ECF No. 14, Exs. A, B. & D. The record clearly shows, however, that the Sheriff was unable to serve her. Brown was only served after the Petitioner provided the trial court with her cellphone number. She was served at her place of employment, and she advised the Court that the address the Petitioner provided for her and her mother was not correct. The Court does not dispute that the Petitioner did all he could to secure his witnesses for trial; however, even counseled defendants and the State are not always successful in securing their witnesses.

As noted above, the post-conviction court found that the trial court endeavored to secure the attendance of the Petitioner's witnesses, including Barry. *See* ECF No. 12, Ex 10, p. 180-86, 196-97, 229-30; Ex. 11 p. 3-4, 47, 80, 83, 94-95, 108-1-09, 123, 133, 188-89. Additionally, appellate counsel testified that she identified the compulsory process issue as a possible claim for appeal but after researching the case decided not to raise the claim on direct appeal given the trial record. *Id.*, Ex. 22, p, 24. The state post-conviction court found this decision reasonable. *Id.*, Ex. 23.

### 4. Ineffectiveness Claims Conclusion

Appellate counsel, who files a brief on the merits, need not, and should not, raise every non-frivolous claim, but rather is free to select from among them to maximize the likelihood of success on appeal. *See Smith v. Robbins*, 528 U.S. 259, 288 (2000). Under *Strickland*, "it is difficult to demonstrate that counsel was incompetent" when alleging ineffectiveness for failure to raise a particular claim. *See id.* "Generally, only when ignored issues are clearly stronger than those presented, will the presumption of effective assistance of counsel be overcome."

---

[2] Notably, Ms. Barry's affidavit does not disclose whether she would have testified on the Petitioner's behalf, nor the substance of her testimony.

*Gray v. Greer*, 800 F.2d 644, 646 (7th Cir. 1986)

Here, the Petitioner fails to demonstrate a substantial possibility that the omitted claims would have led to a reversal of his convictions. The likelihood of his success on appeal with the double jeopardy and compulsory process claims was minuscule, and appellate counsel was not required to raise such issues at the expense of burying good arguments. *See Jones v. Barnes*, 463 U.S. 745, 753-54 (1983). There was no ineffective assistance of counsel in failing to raise these issues. The post-conviction court's determinations survive scrutiny under § 2254(d).

C. Denial of Withdrawal of Waiver of Counsel and Postponement Request[3]

A criminal defendant has a Sixth Amendment right to self-representation. *See Faretta v. California*, 422 U.S. 806, 819 (1975). A criminal defendant may waive the right to counsel and proceed at trial *pro se* only if the waiver is: (1) clear and unequivocal; (2) knowing, intelligent, and voluntary; and (3) timely. *See United States v. Frazier–El*, 204 F.3d 553, 558 (4th Cir. 2000) (collecting cases). The waiver of counsel is "intelligent" when the defendant "knows what he is doing and his choice is made with eyes open." *Adams v. United States*, 317 U.S. 269, 279 (1942). The information a defendant must have to make an intelligent waiver depends on case-specific factors, including the defendant's education, the complexity of the charges, and the stage of the proceedings. *Iowa v. Tovar*, 541 U.S. 77, 88 (2004). To waive trial counsel, the defendant must be specifically warned of the hazards of self-representation. *Faretta*, 422 U.S. at 835. In a collateral attack on an uncounseled conviction, the defendant has the burden of proving that he did not competently and intelligently waive his right to counsel. *Tovar*, 541 U.S. at 92.

---

[3] The Petitioner's claim that the Court of Special Appeals' decision constituted an unreasonable determination of the facts will not be considered, because the relevant state court determination for AEDPA review is the last reasoned state court decision to consider the claim. *See Ylst v. Nunnemaker*, 501 U.S. 797, 804-06 (1991). Here, that review is the opinion of the Maryland Court of Appeals.

In rejecting the Petitioner's claim that the Circuit Court abused its discretion in denying his requests for a postponement and to withdraw his waiver of counsel, the Court of Appeals made extensive findings of facts and legal conclusions:

> Our review of the transcript indicates that Jones demonstrated . . . an evolving realization that he wanted counsel. Judge North considered whether to grant Jones a continuance to procure counsel before finally and conclusively denying postponement of the trial. The Court questioned Jones, "[s]ir, will the request for postponement have any bearing on . . . whether or not you want to have an attorney represent you?" Jones responded, "[w]ell, right now I haven't made that decision, but I want to contemplate. . . that decision in reference to. . . my continuance." Later, Jones stated, "as of today I'm stating for the records that I don't have adequate time to go through this discovery. That's one. Two is the fact that I'm in limbo as far as getting some counseling in reference to these charges." Jones explained,
>
>> [b]ecause I had the opportunity to confer with a few attorneys in reference to the nature of the charges the State is charging me with. . . . And under their understanding, I mean, I - - the only reason why I'm basically doing this, Your Honor, is the fact that I feel content with what basically I'm doing. But my whole point as far as today is concerned is that I would like . . . a continuance . . .
>
> The court responded by pointing out that Jones had had six months to think about and pursue his options concerning representation. The court continued,
>
>> you can't keep your options open forever. There are time limits. The time for you to decide whether you wanted an attorney was between that November date and your trial date. You are supposed to consider those options [and] come in with your attorney on your trial date. We can't just postpone cases indefinitely as you can imagine and let people reconsider and reconsider their options.
>
> The dialogue continued. Jones "clarified" that he would accept a private attorney or a pro bono attorney appointed by Judge North, but that he did not want a public defender. At this point, the court recessed so that Judge North could review Judge Caroom's notes. The court returned and announced, "[s]o, sir, I think that you have been offered the opportunity to have a postponement prior to today. Now the State is disadvantaged. They have all their witnesses here today. So I am not going to grant your request for a postponement." Yet, while still before Judge North, Jones repeated his arguments regarding his asserted inability to review

discovery and his lack of counsel. The hearing finally ended with the following colloquy:

> The Court: Okay. Your request is denied, sir. And part of the reason, sir, is that you had this opportunity at least on three occasions - -
>
> Jones: *Well, I'm not capable of representing myself*
>
> The Court: Three occasions on May 3rd you could have asked for a postponement. You said you didn't need any additional time to prepare. You knew you had 900 pages of discovery, and also the fact that . . . you have answered my questions that you made no attempt to get a Public Defender . . . you would be a lot better off with a Public Defender. . . .

Although Jones may have begun the hearing before Judge North with the purpose of seeking a continuance to review discovery responses, as events unfolded, Jones apparently came to the view, albeit rather late in the "day" of his case, that he wished counsel going forward and needed a continuance from Judge North to pursue that. When Judge North told Jones that he would not have unlimited time to decide whether to obtain counsel, he tried to negotiate for an attorney other than a public defender. Judge North denied postponement even as Jones continued exclaiming, "[w]ell, I'm not capable of representing myself." [We] find that Judge North . . . considered, when denying his request for a postponement, Jones's pleas regarding discovery and his epiphany regarding the desirability of legal counsel. . . .

Jones's hearing before Judge North consumed nearly 100 pages of transcript. During this time, Judge North questioned Jones extensively about both the discovery issue and the need for an attorney. As to the discovery matter, Jones received a full version of the relevant discovery responses at least 12 days before trial. Moreover, the State explained that the discovery responses also had been provided in three batches prior to the date on which the sum version was provided, and that Judge Caroom had not found the State in violation of discovery rules thereby. Judge North offered Jones the opportunity to explain why he did not want a postponement a week earlier when it was virtually offered to him by Judge Caroom. The record demonstrates that Judge North considered Jones's answers. She observed that nothing had changed between the time of Jones's appearance before Judge Caroom and his appearance before her. . . .

The record indicates that Jones had many opportunities to secure counsel prior to the day of trial, but knowingly waived those opportunities despite the solicitous suggestions by various judges that he would be better off with legal

representation. . . . For the foregoing reasons, we conclude that Judge North and Judge Goetzke properly exercised their respective discretion in this case to deny Jones a postponement of his trial.

ECF No. 12, Ex. 20, p. 24-40 (internal citations omitted).

The factual findings of the state court are supported by the record. The Petitioner's waiver of his right to counsel was unequivocal, knowing and voluntary, despite the prosecutor's and several circuit court judges' efforts to convince him of the benefit of proceeding to trial with the assistance of counsel. The Petitioner repeatedly declared his desire to represent himself, up until the day of trial. *Id.*, Ex. 4, p. 6-12, Ex. 5 4-5. The record further shows that, one week before the commencement of trial, the Petitioner again confirmed his intent to proceed without counsel even in the face of the "late" filed voluminous discovery material. *Id.*, Ex. 6, p. 3. The Petitioner was offered a postponement by the court so that he could review over 900 pages of discovery, but declined the offer. He was warned that he might not be permitted a postponement should he request one on his trial date. The Petitioner again declined the offered postponement, reiterated his desire to proceed without counsel, and elected to proceed to trial. *Id.*, p. 38-87.

On the scheduled trial date, the Petitioner sought a postponement from the Honorable Pamela North, the designee of the administrative judge, so he could complete his review of the discovery materials. He also requested appointment of a pro bono attorney, on the condition that counsel not be from the Public Defender's office. Judge North found that the Petitioner had repeatedly declined Judge Caroom's offers of postponement the week before, which would have enabled him to complete review of the discovery materials, and further found that the Petitioner had failed to make any effort to secure the assistance of counsel. Accordingly, Judge North declined the Petitioner's requests. The matter then proceeded to the Honorable Paul Goetzke for

trial, where the Petitioner renewed his requests for a postponement and stated his willingness to accept a court-appointed attorney or a Public Defender. *Id.*, Ex. 7, p. 5-6, 19, *Id.*, Ex. 8, p. 6, 29-31. The Petitioner's requests were again denied. The trial court's decision to deny the postponement request was based on a full review of the circumstances of the Petitioner's case, including that the State was prepared to proceed with numerous witnesses from various jurisdictions. *Id.*, Ex. 20, p. 24-40.

A trial judge's decision to deny a motion for a continuance will not be disturbed absent "a clear showing of abuse of discretion." *United States v. Williams,* 10 F.3d 1070, 1079 (4th Cir. 1993). The Petitioner fails to show that the trial court abused its discretion in denying his request for a continuance on the morning of trial. *See United States v. McQueen,* 445 F.3d 757, 761 (4th Cir. 2006) ("It is not a denial of the right to counsel to refuse to indulge in the defendant's transparent attempts at manipulation by requesting an attorney on the day of trial."); *United States v. West,* 877 F.2d 281, 286 (4th Cir. 1989) (it was not error for the district court to deny a *pro se* defendant's request for counsel because of the "interest in proceeding on schedule") (*quoting United States v. Solina,* 733 F.2d 1208, 1211–12 (7th Cir. 1984) ("If at the last minute he gets cold feet and wants a lawyer to defend him he runs the risk that the judge will hold him to his original decision in order to avoid the disruption of the court's schedule . . . .")).

The Court of Appeals' factual determinations that the denial of the withdrawal of the waiver of counsel and request for postponement were not an abuse of discretion and did not deny the Petitioner's right to counsel are supported by the record. The denials were made based on the trial court's experience with the Petitioner, a review of the court file detailing the circumstances leading up to the Plaintiff's trial, and the State's preparedness to proceed to trial. The Court of

Appeals decision does not involve an "unreasonable application of clearly established" Supreme Court precedent under § 2254(d) and the decision will not be disturbed.

III. Conclusion

The Petitioner is not entitled to federal habeas relief. There is no basis to find constitutional deficiencies in the state court proceedings, and the Petitioner has failed to rebut the presumption of correctness of the findings of fact underlying the rejection of his grounds for post-conviction or appellate relief. For the reasons stated above, the Petition will be denied.

Further, a Certificate of Appealability may issue "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). The Petitioner "must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong," *Tennard v. Dretke*, 542 U.S. 274, 282 (2004) (citation and internal quotation marks omitted), or that "the issues presented are adequate to deserve encouragement to proceed further," *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003). Because the Petitioner has not made a substantial showing of the denial of a constitutional right, a Certificate of Appealability will be denied. *See* § 2253(c)(2).

Date: 10/2/13

William D. Quarles, Jr.
United States District Judge